**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **GUNVOR USA LLC and GUNVOR SA** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **V.** | § | C.A. No. _____ |
| | § | **IN ADMIRALTY, Rule 9(h)** |
| **VALERO MARKETING & SUPPLY** | § | |
| **COMPANY; VESSEL CO 8 PTE. LTD.;** | § | |
| **TORM A/S;** *in personam,* **and the** | § | |
| **TORM THUNDER, her engines, tackle,** | § | |
| **apparel, etc.,** *in rem* | § | |
| | § | |
| **Defendants.** | § | |

## <u>PLAINTIFFS' ORIGINAL COMPLAINT</u>

Plaintiffs, Gunvor USA LLC ("GUSA") and Gunvor SA ("GSA"), as their interests may appear, and others on whose behalf Plaintiffs sue, as their interests will ultimately appear, by their attorneys Royston, Rayzor, Vickery & Williams, L.L.P., file this their Original Complaint against Valero Marketing & Supply Company ("Valero"), Vessel Co 8 Pte. Ltd. ("Vessel Co"), Torm A/S ("Torm"), *in personam* and the M/T TORM THUNDER, her engines, tackle, apparel, etc. ("the Vessel"), *in rem*, (Vessel Co., Torm and the Vessel collectively are "Vessel Interests") and allege as follows upon information and belief:

### I.
### <u>INTRODUCTION</u>

1.      This action involves a claim against the seller Valero of a cargo of approximately 300,000 barrels of Naphtha ("the cargo") as well as against the Vessel owner, Vessel Co., the time chartered owner, Torm, and the Vessel on which the cargo was transported, M/T TORM THUNDER.  As the Naphtha cargo was found to be off-spec for Oxygenates and/or otherwise contaminated, Plaintiffs assert causes of action against the seller Valero for breach of the

sale/purchase contract and against the Vessel and her owners for breach of the bill of lading contract, breach of bailment, and negligence.

## II.
## JURISDICTION AND VENUE

2.      This is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.  This Honorable Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1333, as well as supplemental jurisdiction under 28 U.S.C. § 1367.

3.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions given rise to the claim occurred in this judicial district.

## III.
## PARTIES

4.      Plaintiff GUSA is a limited liability company organized and existing under the laws of the State of Delaware with an office and its principal place of business located at 600 Travis Street, Suite 6500, Houston, Texas 77002.  GUSA was the buyer of the cargo from Valero and arranged the voyage charter of the Vessel.

5.      Plaintiff GSA is a foreign corporation or other business entity with an office and principal place of business located at Rue Du Rhône 80-84, Geneva, 1204, Switzerland. GSA was the FOB buyer of the cargo from GUSA.

6.      Defendant Valero is a corporation organized and existing under the laws of the State of Delaware with an office and its principal place of business located at One Valero Way, San Antonio, Texas 78249-1616.  Valero may be served through its registered agent CT Corporation System, 1999 Bryan St., Suite 900, Dallas, Texas 75201-3136.  Valero was the seller of the cargo.

7.     Defendant Vessel Co. was and is a foreign corporation or other business entity with an address located at 6 Battery Road, #27-02, Singapore 049909 and was and is the registered owner of the M/T TORM THUNDER.  Vessel Co. is a foreign entity not authorized to do business in Texas but, at all times material, did business in Texas by shipping cargo aboard Vessels to and from Texas, entering into bills of lading and/or other contracts of carriage to be performed wholly or partly in Texas, and/or by committing a tort in Texas, each of which constitutes doing business in Texas in accordance with Section 17.042 of the Texas Civil Practice & Remedies Code.  Vessel Co. is a non-resident as that term is used in Subchapter C of Chapter 17 of the Texas Civil Practice & Remedies Code but has not designated or maintained a registered agent in Texas.   Alternatively, although Vessel Co. may not be subject to the jurisdiction of the court of general jurisdiction of Texas or of any other state, Plaintiffs' action arises under federal law and Vessel Co. has sufficient national minimum contacts with the United States as a whole.  The exercise of personal jurisdiction over Vessel Co. is consistent with the constitutions and other laws of the United States and the State of Texas.  Accordingly, serving Vessel Co. with a summons is effective to establish personal jurisdiction over it.  Vessel Co. can be served by serving the Texas Secretary of State.  Process or notice can be sent to 6 Battery Road, #27-02, Singapore 049909.

8.     Defendant Torm was and is a foreign corporation or other business entity with an address located at Tuborg Havnevej 18, 2900 Hellerup, Denmark, and was the commercial/technical manager, operator and/or time chartered owner of the Vessel. Torm is a foreign entity not authorized to do business in Texas but, at all times material, did business in Texas by shipping cargo aboard Vessels to and from Texas, entering into bills of lading and/or other contracts of carriage to be performed wholly or partly in Texas, and/or by committing a tort

in Texas, each of which constitutes doing business in Texas in accordance with Section 17.042 of the Texas Civil Practice & Remedies Code.  Torm is a non-resident as that term is used in Subchapter C of Chapter 17 of the Texas Civil Practice & Remedies Code but has not designated or maintained a registered agent in Texas.  Alternatively, although Torm may not be subject to the jurisdiction of the court of general jurisdiction of Texas or of any other state, Plaintiffs' action arises under federal law and Torm has sufficient national minimum contacts with the United States as a whole.  The exercise of personal jurisdiction over Torm is consistent with the constitutions and other laws of the United States and the State of Texas.  Accordingly, serving Torm with a summons is effective to establish personal jurisdiction over it.  Torm can be served by serving the Texas Secretary of State.  Process or notice can be sent to Tuborg Havnevej 18, 2900 Hellerup, Denmark.

9.      Defendant Vessel, the M/T TORM THUNDER, *in rem*, IMO No. 9712307, was and is a Singapore-flagged chemical/oil products tanker which carried the subject cargo.  During the pendency of this action, the Vessel will be within the jurisdiction of this Honorable Court.

**IV.**
**FACTS**

**Sale/Purchase contracts**

10.      On or about September 7, 2018, Valero, as seller, and GUSA, as buyer, entered into Valero Trade Numbers 2474935 and 2474923 for the purchase of 300,000 barrels of heavy Naphtha to be delivered by Valero at the Kinder Morgan Liquids Terminals Galena Park Terminal ("KM Galena Park") to a Vessel nominated by GUSA.  Subsequently, GUSA received confirmations from Valero for each trade. A copy of confirmation for Trade Number 2474923, dated September 11, 2018, is annexed as Exhibit 1 and is fully incorporated by reference for all

purposes. The most recent confirmation for Trade Number 2474935, dated September 25, 2018, is annexed as Exhibit 2 and is fully incorporated by reference for all purposes.

11.     Under confirmation for Trade Number 2474923, dated September 11, 2018, the total quantity was 200,000 barrels min/max, Delivery Terms FOB-2010. Under the confirmation for Trade Number 2474935, the total quantity was 100,000 barrels +/- 10% Sellers Option, Delivery Terms DAP-2010. The trade confirmations provided that title and risk of loss passed from Valero to GUSA at the shore manifold. Further, under the trade confirmations, Valero Marketing and Supply Company's General Terms and Conditions for Petroleum Product Purchases/Sales 2014 ("GTCs") were incorporated into the contract.

12.     By contract dated September 12, 2018, GUSA, as seller, and GSA as buyer, reached an agreement for the sale and purchase of 300,000 barrels +/- 5% of the seller's option of heavy Naphtha.  The cargo was sold FOB KM Galena Park.  A copy of the sales contract is annexed as Exhibit 3 and is fully incorporated by reference for all purposes.

13.     On October 16, 2018, GUSA provided Valero with written notice of claim related to product quality pursuant to section 4.6 of the Valero GTCs.  A copy of the written notice of claim is annexed as Exhibit 4 and is fully incorporated by reference for all purposes.

14.     Commercial invoice Nr 8345010221NAP dated October 2, 2018, with GUSA, as seller, and GSA, as buyer, referencing contract GS1810792-001 dated September 12, 2018, covering 300,130.09 net US barrels of Naphtha FOB loaded in Houston FOB Amsterdam aboard the TORM THUNDER confirms the sale for $24,189,884.99.  A copy of the commercial invoice is annexed as Exhibit 5 and is fully incorporated by reference for all purposes.

**September 13-16, 2018 loading of the Naphtha cargo**

15.      Prior to delivery, approximately 200,000 barrels of the cargo was stored in Valero tanks (100-16 and 100-17) at KM Galena Park. The product in Valero tanks 100-16 and 100-17 tested on-spec prior to loading.

16.      Additionally, approximately 100,000 barrels naphtha was to be provided by Valero from two sets of barges, EMS 3012/309 and HTCO 3072/3106. Likewise, the product in the barges tested on-spec prior to loading.

17.      Simultaneous loading from shore tanks and barges was permitted. Loading from the barges would be accomplished across the dock, via shore loop.

18.      In order to load the Naphtha cargo from shore tanks 100-16 and 100-17, KM Galena Park would have to utilize the "Lukoil line" from 3400 to #2 ship dock.

19.      Upon information and belief, prior to the Vessel's arrival, KM Galena Park had a set of barges use the "Lukoil line" to discharge to shore tank 100-26. After the completion of discharge from the barges, the lines were cleared to tank 100-26, leaving the line laid down with transmix of unknown quality.

20.      The naphtha cargo from the two sets of barges was to be loaded from #2 barge dock to #2 ship dock utilizing 8-D loop line. Manifold 4 was connected to the shore loop from the barges EMS and HTCO.

21.      The TORM THUNDER completed its sea passage to the Galveston/Houston area on September 8, 2018 at 1112 hours and tendered Notice of Readiness at approximately 0900 hours on September 11, 2018.

22.     After the completion of inspections and gauging of shore tanks, the Vessel was alongside and all fast at KM Galena Park, ship dock #2 on or about September 13, 2018, at approximately 1936 hours.

23.     The ship-shore meeting between the Vessel and the terminal was held from 2100 to 2145 on September 13, 2018. On September 13, 2018 at 2130, NOR was accepted and the Vessel inspection was completed at 2142 hours.

24.     Cargo hoses were connected by 2154 hours. Upon information and belief, Vessel manifolds 2 and 5 were connected to shorelines from shore tanks 16 and 17 respectively. Loading from the shore tanks commenced at 2348 hours on September 13, 2018.

25.     On September 14, 2018 at 0024 hours, loading was suspended for line verification. Loading resumed at 0036 hours.

26.     On September 14, 2018, at 1230 hours, the first set of barges, EMS 309 and EMS 3012 arrived and were berthed at KM Galena Park, barge dock #2 at 1305 hours.

27.     After Vessel inspections and connection of hoses, discharging of cargo from the EMS barges to the Vessel commenced at 1525 hours on September 14, 2018.

28.     Discharging from the EMS barges was completed on September 15, 2018, at approximately 1040 hours, and hoses were disconnected and the barges released by 1115 hours on September 15, 2018.

29.     On September 15, 2018, at 1230 hours, loading from shore tanks 100-16 and 100-17 was completed.

30.     The second set of barges, HTCO 3072 and HTCO 3106, arrived at 1245 hours on September 15th and were berthed at KM Galena Park, barge dock #2 at 1330 hours.

31.     After Vessel inspections and connection of cargo hoses, loading from the HTCO barges commenced at 1735 hours on September 15th.

32.     On September 16, 2018, at 1115 hours, loading from the HTCO barges was completed.  The HTCO barges were released by the terminal at 1220 hours on September 16th.

33.     From 1205-1305 hours on September 16th, KM Galena Park performed a line push from 15-1.

34.     On or about September 16, 2018, the Vessel issued its bill of lading number VMSC1944014, clean onboard, 300,130.09 barrels of heavy NAPHTHA.  The bill of lading was consigned to the order of Cooperatieve Rabobank U.A. Rabobank is the lead agent on the GUSA credit facility. Pursuant to the terms of the credit facility, all bills of lading must be made out to Rabobank. Bill of Lading number VMSC1944014 was signed "on behalf of the Master, Captain Dinesh Anand." A copy of the bill of lading is annexed as Exhibit 6 and is fully incorporated by reference for all purposes.

35.     The cargo samples taken from the KM Galena Park terminal lines indicated non-conforming product.   Additionally and alternatively, the cargo samples taken after loading aboard the Vessel did not meet specifications.

## V.
### FIRST CAUSE OF ACTION
**Breach of Contract Against Valero**

36.     Plaintiffs reallege and incorporate herein each and every allegation and averment contained in Paragraphs 1-35 of Plaintiffs Original Complaint with the same force and effect as if the same were more fully set forth herein.

37.     Plaintiffs and Defendant Valero entered into a valid and enforceable written contract for the sale/purchase of the Naphtha cargo made subject of the instant action.

38.     The contract provided that Valero would deliver a Naphtha cargo within contractual specifications, including specs for oxygenates.

39.     From September 13-16, 2018, Valero made delivery of the Naphtha cargo to GUSA at KM Galena Park.  The cargo delivered by Valero was found to be contaminated or otherwise "off-spec" in that it failed to meet the specifications provided for in the trade confirmations.

40.     Defendant Valero breached its obligations under the contract by failing to deliver Naphtha cargo within the contractual specifications.

41.     Plaintiffs fully performed their obligations under the contract by paying the purchase price.

42.     As a direct and proximate result of Defendant Valero's breach of contract, Plaintiffs suffered injury, which resulted in Plaintiffs sustaining damages, including but not limited to, the costs of replacement cargo, increased ocean freight charges, costs of the mitigation of the damaged cargo, increased demurrage, increased bunker consumption and increased inspection and analysis costs, as nearly as can be presently ascertained, in the amount of ONE MILLION SIX HUNDRED FIFTY-TWO THOUSAND SEVEN HUNDRED THIRTY-SEVEN AND 00/100 DOLLARS ($1,652,737.00), together with interest and costs of this action, as well as attorney's fees in pursuing this action, no part of which has been paid although duly demanded.

## Attorney Fees

43.     As a result of Defendant Valero's breach, Plaintiffs have had to employ Royston, Rayzor, Vickery & Williams LLP to recover the damages owed to them by the Defendant

Valero.  Plaintiffs seek reimbursement for its reasonable attorney fees, as authorized Texas Civil

Practice & Remedies Code § 38.001.

**VI.**
**SECOND CAUSE OF ACTION**
**Breach of Contract Against Defendants Vessel Interests**

44.     Plaintiffs reallege and incorporate herein each and every allegation and averment

contained in Paragraphs 1-35 of Plaintiff's Original Complaint with the same force and effect as

if the same were more fully set forth herein.

45.     Alternatively, at all material times, the Defendants Vessel Interests were common

carriers of merchandise by water for hire within the meaning of the United States Carriage of

Goods by Sea Act, 46 U.S.C. § 1300, *et seq.* ("COGSA") or the Hague-Visby Rules and

breached their duties as carriers under those Acts and under the contract entered into.

46.     On or about September 13-16, 2018, Plaintiffs tendered and Defendants Vessel

Interests received the Naphtha cargo in good order and condition. Defendants Vessel Interests

agreed to safely receive, handle, load, stow, secure, carry, discharge and deliver the cargo in the

same good order and condition as when received, in consideration of freight charges paid or

agreed to be paid. Defendants Vessel Interests acknowledged receipt of the cargo in good order

and condition and, accordingly, issued Bill of Lading VMSC1944014, dated September 16,

2018, free of exceptions or other notations for loss or damage (Exhibit 6).

47.     Thereafter, when Defendants Vessel Interests tendered the cargo to the consignee,

the cargo was no longer in the same good order and condition as when received, but, instead, was

damaged, contaminated and/or off-spec. The damage to the cargo resulted from Defendants

Vessel Interests' breach of contract and/or violation(s) of the duties of a common carrier of

goods by water for hire. Alternatively, the loss proximately resulted from the unseaworthiness of the M/T TORM THUNDER.

48.     Defendants Vessel Interests represented that the last cargo was free of MTBE. However, the last cargo prior to loading at Houston was oxygenated gasoline, which contains MTBE. Upon information and belief, the Vessel was not adequately cleaned to carry the subject cargo of Naphtha and prior cargo/cargo residue left in the Vessels, manifolds, lines and/or tanks resulted in the contamination of the naphtha cargo and its off-specification.

49.     At all material times, Plaintiffs performed all of their obligations under any contract(s) with Defendants Vessel Interests. At no time did any of Plaintiffs' acts or omissions cause or contribute to the damage to the cargo or Plaintiffs' proximately resulting loss and damages.

50.     As a direct and proximate result of Defendants Vessel Interests' breach of contract, Plaintiffs suffered injury, which resulted in Plaintiffs sustaining damages, including but not limited to, the costs of replacement cargo, increased ocean freight charges, costs of the mitigation of the damaged cargo, increased demurrage, increased bunker consumption and increased inspection and analysis costs, as nearly as can be presently ascertained, in the amount of ONE MILLION SIX HUNDRED FIFTY-TWO THOUSAND SEVEN HUNDRED THIRTY-SEVEN AND 00/100 DOLLARS ($1,652,737.00), together with interest and costs of this action, as well as attorney's fees in pursuing this action, no part of which has been paid although duly demanded.

## **Attorney Fees**

51.     As a result of Defendants Vessel Interests' breach, Plaintiffs have had to employ Royston, Rayzor, Vickery & Williams LLP to recover the damages owed to them by the

Defendants Vessel Interests.  Plaintiffs seek reimbursement for its reasonable attorney fees, as authorized Texas Civil Practice & Remedies Code § 38.001.

## VII.
## THIRD CAUSE OF ACTION
### Breach of Bailment Against Defendants Vessel Interests

52.    Plaintiffs reallege and incorporate herein each and every allegation and averment contained in Paragraphs 1-35 and 44-50 of Plaintiffs Original Complaint with the same force and effect as if the same were more fully set forth herein.

53.    Defendants Vessel Interests were acting as bailees of the shipment at the time it was contaminated.  The Defendants Vessel Interests were, or through their contractors, agents, servants or sub-bailees, bailees who warranted and had a legal duty to safely keep, care for, maintain and deliver the cargo of Naphtha in the same good order and condition as when entrusted to them and to perform their services as bailees or to ensure that those services were performed with reasonable care and in a non-negligent and workmanlike manner.

54.    The Defendants Vessel Interests breached, failed and violated their duties and obligations as bailees of the cargo, were otherwise at fault and negligently failed to deliver the shipment as designated in the same good condition as when entrusted to them but rather in a contaminated condition and/or off-specification.

55.    As a direct and proximate result of Defendants Vessel Interests' breach of their bailment obligations, Plaintiffs suffered injury, which resulted in Plaintiffs sustaining damages, including but not limited to, the costs of replacement cargo, increased ocean freight charges, costs of the mitigation of the damaged cargo, increased demurrage, increased bunker consumption and increased inspection and analysis costs, as nearly as can be presently ascertained, in the amount of ONE MILLION SIX HUNDRED FIFTY-TWO THOUSAND

SEVEN HUNDRED THIRTY-SEVEN AND 00/100 DOLLARS ($1,652,737.00), together with interest and costs of this action, as well as attorney's fees in pursuing this action, no part of which has been paid although duly demanded.

**VIII.**
**FOURTH CAUSE OF ACTION**
**Negligence Against Defendants Vessel Interests**

56.     Plaintiffs reallege and incorporate herein each and every allegation and averment contained in Paragraphs 1-35, 44-50, and 52-55 of Plaintiffs Original Complaint with the same force and effect as if the same were more fully set forth herein.

57.     Defendants Vessel Interests owed a legal duty to Plaintiffs to deliver the Naphtha cargo in the same good order and condition as when received.

58.     Defendants Vessel Interests breached their duty to Plaintiffs by failing to deliver the Naphtha cargo in the same good order and condition as when received.

59.     Defendants Vessel Interests' careless, negligent and reckless conduct caused the contamination and the resulting off-specification of the Naphtha cargo.  Upon information and belief, the last cargo prior to loading at Houston was oxygenated gasoline, which contains MTBE. Upon information and belief, the Vessel was not adequately cleaned to carry the subject cargo of Naphtha and prior cargo/cargo residue left in the Vessels, manifolds, lines and/or tanks resulted in the contamination of the Naphtha cargo and its off-specification.

60.     As a direct and proximate result of Defendants Vessel Interests' breach of their duties and obligations, Plaintiffs suffered injury, which resulted in Plaintiffs sustaining damages, including but not limited to, the costs of replacement cargo, increased ocean freight charges, costs of the mitigation of the damaged cargo, increased demurrage, increased bunker consumption and increased inspection and analysis costs, as nearly as can be presently

ascertained, in the amount of ONE MILLION SIX HUNDRED FIFTY-TWO THOUSAND SEVEN HUNDRED THIRTY-SEVEN AND 00/100 DOLLARS ($1,652,737.00), together with interest and costs of this action, as well as attorney's fees in pursuing this action, no part of which has been paid although duly demanded.

61.     By reason of the premises, the Defendants Vessel Interests negligent acts and omissions constitute a maritime tort which gives rise to a maritime lien against the Vessel which Plaintiffs are entitled to enforce pursuant to Rule C of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure against the Vessel, *in rem*.

## IX.
## CONDITIONS PRECEDENT

62.     All conditions precedent have been performed, satisfied and/or discharged.

63.     All and singular, the premises of this Original Complaint are true and correct and within the admiralty and maritime jurisdiction of the United States and of this Honorable Court.

## X.
## DAMAGES

64.     Each of the Defendants has caused damage to Plaintiffs, as their interests may appear, and to others on whose behalf Plaintiffs sue, as their interests will ultimately appear, in an amount, as nearly as can now be estimated, up to and exceeding the amount of ONE MILLION SIX HUNDRED FIFTY-TWO THOUSAND SEVEN HUNDRED THIRTY-SEVEN AND 00/100 DOLLARS ($1,652,737.00), together with interest and costs of this action, as well as attorney's fees in pursuing this action, no part of which has been paid although duly demanded.

## XI.
## <u>PRAYER</u>

WHEREFORE, PREMISES CONSIDERED, Plaintiffs Gunvor USA LLC and Gunvor SA pray:

a.     That due process in the form of law, according to the course and practice of this Honorable Court in causes of admiralty and maritime jurisdiction within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure, issue against the Defendants, citing them to appear and answer the foregoing, failing which a default will be taken against them for the principal amount of the claim, plus interest, costs and attorney's fees;

b.     That a warrant for the arrest of the Vessel, M/T TORM THUNDER, and her engines, tackle, apparel, etc., *in rem*, be issued according to the practices of this Honorable Court in causes of admiralty and maritime jurisprudence, and all persons having or claiming any interest therein be cited to appear and answer, under oath, all and singular of the matters aforesaid;

c.     That Plaintiffs have judgment entered in its favor against Defendants, jointly and severally, on each of the causes of action specified for the amount of Plaintiffs' damages, together with interest, costs and disbursements of this action and attorney's fees;

d.     That the Vessel be condemned and sold to satisfy Plaintiffs' judgment; and

e.     That the Court grant such other, further and different relief as the Court deems just and proper.

Respectfully submitted,

 */s/ Kevin P. Walters*
Kevin P. Walters
Texas State Bar No. 20818000
Federal I.D. No. 5649
Dimitri P. Georgantas
Texas State Bar No. 07805100
Federal I.D. No. 2805
ROYSTON, RAYZOR, VICKERY & WILLIAMS, LLP
1600 Smith Street, Suite 5000
Houston, Texas 77002-7380
Telephone: (713) 224-8380
Facsimile:  (713) 225-9545
kevin.walters@roystonlaw.com
dimitri.georgantas@roystonlaw.com

**ATTORNEYS FOR PLAINTIFFS**
**GUNVOR USA LLC and GUNVOR SA**