United States District Court
Southern District of Texas
**ENTERED**
May 18, 2020
David J. Bradley, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| GUNVOR USA LLC, ET AL., | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:19-CV-2522 |
| | § | IN ADMIRALTY, RULE 9(h) |
| VALERO MARKETING AND SUPPLY CO., | § | |
| ET AL., | § | |
| *Defendants*. | § | |

## MEMORANDUM AND RECOMMENDATION

This Admiralty dispute is before the Court on the Motion to Dismiss of Third-Party Defendant Kinder Morgan Liquid Terminals, LLC (KMLT).[1]  Dkt. 36.  By Order issued May 5, 2020 (Dkt. 45), the Court vacated the Memorandum and Recommendation issued May 1, 2020 (Dkt. 44).  The Court conducted a hearing on the record by ZOOM on May 13, 2020.  Having considered the parties' submissions, argument at the hearing, and the law the Court recommends that KMLT's Motion to Dismiss be granted in part and denied in part.

### I.    Background

This Admiralty case involves damage to 300,000 barrels of heavy Naphtha alleged to have occurred between September 13-16, 2018.  On or about September 7, 2018, Gunvor[2] entered in contracts with Valero for 300,000 barrels of heavy Naphtha to be delivered by Valero at the Kinder

---

[1] KMLT filed its initial motion to dismiss (Dkt. 18) on October 14, 2019, prior to Gunvor's filing of a First Amended Complaint (Dkt. 22) and Valero's filing of a First Amended Third Party Complaint (Dkt. 32).  In light of KMLT's current motion directed to Gunvor's and Valero's operative pleadings, KMLT's prior Motion to Dismiss (Dkt. 18) is denied as moot.

[2] Gunvor refers collectively to Plaintiffs Gunvor USA LLC ("GUSA") and Gunvor SA ("GSA").  GUSA contracted with Valero to purchase the product for sale to its buyer, GSA.

Morgan Liquids Terminals Galena Park Terminal (KMLT) to be loaded onto the M/T Torm Thunder.[3]

Prior to delivery to the Vessel, approximately 200,000 barrels of the subject Naphtha were stored in Valero tanks (#100-16 and #100-17) at KMLT.  The product in Valero tanks 100-16 and 100-17 tested on-spec prior to loading on the Vessel at KMLT.  Also prior to delivery to the Vessel, approximately 100,000 barrels of the subject Naphtha were stored on two sets of barges, EMS 3012/309 and HTCO 3072/3106.  The Naphtha on the barges also tested on-spec prior to loading on the Vessel at KMLT.  Gunvor and Valero allege that KMLT utilized its "Lukoil line" to load the Naphtha cargo on the Vessel from Valero's shore tanks 100-16 and 100-17, and that KMLT utilized its "8-D loop line" to load the Naphtha from the barges.  Gunvor and Valero allege that the lines utilized by KMLT were not properly cleaned after prior usage and thereby contaminated the Naphtha.  Gunvor and Valero allege that the samples of Naphtha taken from the KMLT terminal lines and from the Vessel after loading were tested and indicate the Naphtha did not comply with the product specifications.

Gunvor's First Amended Complaint asserts causes of action against Valero for breach of contract; against KMLT for negligence; and against the Vessel for breach of contract, breach of bailment, and negligence.

Valero's Amended Third-Party Complaint asserts claims against KMLT for breach of contract, negligence, breach of implied and express warranties, contractual indemnity, and breach of bailment.  Valero also has asserted a cross claim against the Vessel Interests for negligence.

KMLT now moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss all of Gunvor's and Valero's claims against it.  Dkt. 36.

---

[3] Defendants Vessel Co. 8 Pte Ltd., the owner of the M/T Torm Thunder, Torm A/S, the operator of the M/T Torm Thunder, and the M/T Torm Thunder in rem are referred to collectively as the Vessel.

## II.     Rule 14(c) and 12(b)(6) Standards

### A.  Rule 14(c) Joinder

Gunvor initiated this action in admiralty under Federal Rule of Civil Procedure 9(h). Therefore, Federal Rule of Civil Procedure 14(c) governs Valero's tender of KMLT as a third-party defendant.  Rule 14(c) embodies a policy of liberal joinder in maritime cases.  *Texaco Explor. & Prod. Co. v. AmClyde Engineered Prods. Co.*, 243 F.3d 906, 908 (5th Cir. 2001); *See* 6 Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE §1465 (3d ed. 2020) ("Rule 14(c) has been interpreted to mean that the impleaded party need not be liable to the original plaintiff as long as the third-party claim arose out of the same transaction as the main action."). Unlike joinder under Rule 14(a), Rule 14(c) joinder creates a direct cause of action between the original plaintiff and the third-party defendant by providing that upon filing of a third-party complaint "the action proceeds as if the plaintiff had sued both the third-party defendant and the third-party plaintiff." FED. R. CIV. P. 14(c); *Halloway v. Bashura*, 176 F.R.D. 207, 213 (E.D. Va. 1997).  Therefore, KMLT moves to dismiss all claims in Gunvor's First Amended Complaint, as well as all claims in Valero's Amended Third Party Complaint.[4]

### B.  Rule 12(b)(6) Legal Standards

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), this Court accepts

---

[4] This Memorandum and Recommendation does not address Gunvor's claims against Valero and the Vessel, or Valero's cross-claims against the Vessel, all of which remain pending.

3

all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *Alexander v. AmeriPro Funding, Inc.*, 48 F.3d 68, 701 (5th Cir. 2017) (citing *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).  However, the court does not apply the same presumption to conclusory statements or legal conclusions. *Iqbal*, 556 U.S. at 678-79.

Generally, the court may consider only the allegations in the complaint and any attachments thereto in ruling on a Rule 12(b)(6) motion.  If a motion to dismiss refers to matters outside the pleading it is more properly considered as a motion for summary judgment.  *See* FED. R. CIV. P. 12(d).  However, the court may take judicial notice of public documents, and may also consider documents a defendant attaches to its motion to dismiss under 12(b)(6) if the documents are referenced in the plaintiff's complaint and central to the plaintiffs' claims.  *See Norris v. Hearst Trust,* 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000); *King v. Life Sch.*, 809 F. Supp. 2d 572, 579 n.1 (N.D. Tex. 2011).

## III.   Analysis

### A.  Valero's Claims against KMLT in the Amended Third-Party Complaint

#### 1.  Valero's Breach of Contract of Contract Claim Against KMLT

In order to state a claim for breach of contract against KMLT, Valero must plead:  "(1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) resulting damages to the plaintiff." *Fieldtech Avionics & Instruments, Inc. v. Component Control.Com, Inc.*, 262 S.W.3d 813, 825 (Tex. App.-Fort Worth 2008, no pet.) (citing *Harris v. Am. Prot. Ins. Co.,* 158 S.W.3d 614, 622–23 (Tex. App.-Fort Worth 2005, no pet.)); *Smith Intern., Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007).[5]

---

[5] Counsel for KMLT and Valero agreed on the record at the May 13, 2020 hearing that Texas law governs Valero's claim against KMLT for breach of the Terminal Services Agreement.

KMLT does not dispute that the Terminal Services Agreement (TSA) between Valero and KMLT dated January 29, 2008 is a valid contract that was in effect at the time of the September 2018 events giving rise to this lawsuit.[6]  KMLT also does not dispute that Valero has alleged it performed under the Agreement and incurred damages as a result of the contamination of the Naphtha.  Instead, KMLT argues that Valero's breach of contract claim must fail because it provides "no factual allegations about [KMLT's] performance of services under the [TSA] or how that performance deviated from the level of care by terminal operators engaged in the storage and transfer of similar Commodities." Dkt. 36 at 6.  In other words, KMLT argues Valero has failed to plead facts which, if presumed to be true, would establish KMLT's breach of the TSA.

Valero alleges in the First Amended Third-Party Complaint that KMLT agreed "to provide for the unloading, loading, and storage of Valero's commodities" and "was required to handle the commodities into and out of the storage tanks and to provide facilities necessary to perform such handling."  Dkt. 32 at 10-12, ¶¶12, 21.  A review of the TSA supports Valero's allegations regarding KMLT's obligations under the contract:  The TSA obligates KMLT "to handle the Commodities into and out of the Tanks and provide facilities necessary to perform such handling[;]" charges KMLT with responsibility for and "care, custody, and control" of Valero's commodity from the time it enters KMLT's fixed dock flange or pipeline delivery flange until the time it leaves KMLT's fixed dock flange or pipeline delivery flange; and requires KMLT to "use reasonable care and diligence… to preserve and protect [Valero's] Commodities from damage or loss while in [KMLT's] custody."  Dkt 32 at 25.

Valero alleges that KMLT breached its obligation to use reasonable care and diligence under the Terminal Services Agreement by allowing "negligent handling and/or contamination of

---

[6] The Terminal Services Agreement is attached to the First Amended Third-Party Complaint as Exhibit A and is properly considered in ruling on KMLT's Motion to Dismiss.

the Naphtha." *Id.* ¶23.  Valero alleges additional facts in support of the breach allegations.  For example, Valero's First Amended Third-Party Complaint alleges the Naphtha "tested on-spec prior to loading" (*Id.* ¶15-16); the Naphtha was delivered to the vessel "by way of transfers from shore tanks and . . . barges" (*Id.* ¶17); that KMLT and/or the Vessel Interests "allow[ed] contamination to be injected into the pre-loading on-spec Naphtha" (*Id.* ¶19); and the contamination was caused "in whole or in part by the acts, omissions, fault, negligence, want of due care, failure to warn, improper line clearing, improper handling and/or breach of warranty" of KMLT (*Id.* ¶33).

The pleading standard set forth in *Twombly* does not require detailed factual allegations, but a plaintiff must plead enough facts to raise a reasonable expectation that discovery will reveal evidence to support the allegations.  *Twombly*, 550 U.S. at 556.  The allegations in Valero's First Amended Third-Party Complaint—which include allegations that a valid contract exists between Valero and KMLT, pursuant to which KMLT was obligated to use reasonable care in handling products for Valero, and that KMLT's failure to meet its obligations under the contract by, among other things, improper line clearing and improper handling of the Naphtha, resulted in damages— state a plausible claim against KMLT for breach of the TSA.  Therefore, the Court recommends KMLT's motion to dismiss Valero's breach of contract claim be denied.

## 2.  Valero's Negligence Claim Against KMLT

The basic elements of a negligence claim under Texas law are "a legal duty owed by one person to another, a breach of that duty, and damages proximately caused by the breach."  *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009).  Valero's negligence claim against KMLT alleges:

> [KMLT's] handling, transferring and delivery of Naphtha from Valero's storage tanks and barges to the M/T TORM THUNDER, which allowed for pre-loading on-specification Naphtha to become out of specification, unsuitable, substandard, defective, and/or contaminated constitutes negligence.  [KMLT] owed a duty to

6

> Valero to act non-negligently by providing reasonable care in unloading, handling, transferring and loading of on-specification Naphtha, and to ensure the unloading, handling, transferring and loading was not defective, and did not contaminate the Naphtha.  [KMLT's] failure to do so was negligent and the breach of its duty proximately caused damages to Valero and, in turn, Gunvor and the M/T TORM THUNDER.

Dkt. 32, ¶ 27.  KMLT moves to dismiss Valero's negligence claim on grounds that (1) Valero's claim, if any, sounds in contract, not tort; (2) the negligence claim is barred by the economic loss rule; and (3) Valero's negligence claim is conclusory.  Because the first two grounds are dispositive, the Court does not address the third.

KMLT's first and second grounds for dismissal are closely related.  What is commonly referred to as the "economic loss rule" is not really a single rule, but a doctrine that limits a plaintiff's recovery of damages and serves multiple purposes.  *See Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 415 (Tex. 2011) (explaining that the term "economic loss rule" is a misnomer because it is really several rules that apply to a diverse range of situations); *LAN/STV v. Martin K. Eby Const. Co.*, 435 S.W.3d 234, 245-46 (Tex.2014) (application of the rule does not lend itself to easy answers, and the rationale for the rule determines whether it should be applied in any particular case).  One rationale for the rule as it has developed in Texas law is to protect the boundary between contract and tort actions.  *See, e.g.*, *Regus Mgmt. Grp., LLC, v. Int'l Bus. Mach. Corp.*, No. 3:07-CV-1799-B, 2008 WL 1836360, at *6 (N.D. Tex. 2008) (economic loss doctrine, better described as the independent injury rule, essentially bars a plaintiff from attempting to convert a contract action into a tort action).

It is often "difficult in practice to determine the type of action that is brought." *See Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986).  To determine whether a claim sounds in contract or tort, courts in Texas focus on the nature of the duty and the nature of the remedy sought.  *See Peterson Grp., Inc. v. PLTQ Lotus Grp., L.P.*, 417 S.W.3d 46, 62 (Tex. App.

2013) ("To determine whether the economic loss rule applies, we consider both the source of the defendant's duty to act (whether it arose solely out of the contract or from some common-law duty) and the nature of the remedy sought by the plaintiff." (citation omitted)). "When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone." *Jim Walter Homes, Inc.*, 711 S.W.2d at 618; *see also Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 495 (Tex. 1991) ("Bell's duty to publish DeLanney's advertisement arose solely from the contract.  DeLanney's damages, lost profits, were only for the economic loss caused by Bell's failure to perform. . . . We hold that Bell's failure to publish the advertisement was not a tort.").

In its response to KMLT's motion, Valero's briefing focused on the maritime law economic loss rule that traces its roots to *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 308-09 (1927).  The rule recognized in *Robins Dry Dock* allows a party to recover economic damages in tort when property in which it holds a proprietary interest is damaged.  *Id.*; *see also State of Louisiana v. M/V Testbank*, 752 F.2d 1019, 1022 (5th Cir. 1985).  However, counsel for Valero conceded at the hearing on May 13, 2020 that Texas, not maritime law governs Valero's common law negligence claim against KMLT.

Also during the hearing, counsel for Valero cited *Coastal Conduit & Ditching, Inc. v. Noram Energy Corp.*, 29 S.W.3d 282 (Tex. App. - Houston [14th Dist.] 2000, no pet.) as support for the viability of Valero's negligence claim.  *Coastal* does not address the issue currently before the Court.  The issue before the court in *Coastal* was "whether Texas law prohibits the recovery of purely economic damages in the absence of a claim for personal injury or property damage when the parties are contractual strangers."  29 S.W.3d at 283-84.  Coastal sued Entex alleging that Entex's failure to properly mark its underground gas lines caused Coastal to incur increased costs in digging trenches for electrical lines.  The trial court granted Entex's motion for summary

8

judgment on the ground that *Coastal's* negligence claims were "barred by the economic loss rule in the absence of contractual privity and any accompanying claim for personal injury or property damage." *Id.* at 285. The Court of Appeals affirmed on the same basis. *Id.* at 290. The *Coastal* court's acknowledgment that in some cases economic losses are recoverable in negligence where the parties are in contractual privity, such as in cases of legal malpractice or insurance claim handling (*see id.* at 289), does not preclude the application of the economic loss rule to negligence claims between contracting parties. Indeed, the *Coastal* court noted that one application of the economic loss rule bars recovery in tort where the only loss is to the subject matter of the contract. *Id.* at 285 (citing *DeLanney*, 809 S.W.2d at 494, and *Jim Walter Homes, Inc.*, 711 S.W.2d at 618). As far as this Court is aware, the Texas Supreme Court has not abrogated the well-established rule expressed in *DeLanney* and its progeny that economic losses cannot be recovered in tort where the duty breached is a contractual duty.

Valero has not identified—in its Amended Third-Party Complaint, its Motion to Dismiss briefing, or at the hearing —any duty breached by KMLT that is independent of its duty to perform under the Terminal Services Contract. Valero has not plead "an injury that is distinct, separate, and independent from the economic losses recoverable under a breach of contract claim." *Peterson Grp., Inc.*, 417 S.W.3d at 62. Thus, this case falls squarely within the version of the economic loss rule in Texas that dictates "[w]hen the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone." *Id.*; *see also Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014) ("[A] party states a tort claim when the duty allegedly breached is independent of the contractual undertaking and the harm suffered is not merely the economic loss of a contractual benefit."). Because Valero's direct negligence claim against KMLT is barred by the economic loss rule, the Court recommends the claim be dismissed.

### 3.  Valero's Claim for Breach of Implied and Express Warranties

KMLT argues that Valero's claim for breach of implied and express warranties should be dismissed for three reasons: (1) the breach of implied and express warranties claim is conclusory; (2) the Terminal Services Agreement disclaims all warranties except those expressly set forth in the Agreement; and (3) Valero has failed to identify an express warranty KMLT allegedly breached.

The Court addresses ground 2 first, because it is easily resolved.

The Terminal Services Agreement states:

EXCEPT AS EXPRESSLY HEREIN PROVIDED, THERE ARE NO GUARANTEES OR WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, ANY WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, WHETHER ARISING BY OPERATION OF LAW OR OTHERWISE.

Dkt. 32 at 30, ¶10(b).  Because the parties' contract expressly waives implied warranties in conspicuous and unambiguous language, Valero cannot state a claim against KMLT for breach of implied warranties as a matter of law.  *See Cate v. Dover Corp.*, 790 S.W.2d 559, 560 (Tex. 1990) (implied warranties will be enforced under Texas law unless waived by conspicuous contract language); *Eni Operating Co., Inc. v. TransOcean Deepwater Offshore Oil Drilling Co., Inc.* Civil Action No. 4:13-CV-03354, 2017 WL 10647751, at *15 (S.D. Tex. Dec. 08, 2017) ("The Contract's express prohibition against Eni's recovery for claims of breach of express or implied warranty is enforceable and should be given full effect.").

With respect to KMLT's argument that Valero's breach of warranty claim is conclusory and fails to identify any express warranty that was breached, the Court concludes that Valero's pleading meets the standard required by *Twombly*.  Valero alleges in its First Amended Third Party Complaint that it entered into the TSA "in exchange for certain express and implied warranties

10

and representations with respect to the handling of the commodities while in [KMLT's] care, custody and/or control." Dkt. 32, ¶32. Valero also alleges the representations and warranties "were part of the benefit of the bargain as set forth in the [TSA]," and that the Naphtha was off-spec after unloading, handling, transferring, and loading by KMLT, and thus "did not comply with the representations and warranties agreed to by [KMLT]." *Id.*  Valero further alleges it was damaged as a result.  *Id.*  The TSA, attached to Valero's pleading, states the following in the section regarding "RECEIPTS, DELIVERIES, CUSTODY TRANSFER AND REPORTS":

> For the charges herein, KINDER MORGAN shall handle the Commodities into and out of the Tanks and provide facilities necessary to perform such handling. … In receiving Commodity from marine tankers, barges, tank trucks, tank cars and pipelines, Customer shall be responsible for and have custody of Commodity until it enters KINDER MORGAN's fixed dock flange or KINDER MORGAN's receiving pipeline flange, as the case may be and KINDER MORGAN shall be responsible for and have care, custody and control of Commodity after it enters KINDER MORGAN'S fixed dock flange or KINDER MORGAN'S receiving pipeline flange, as the case may be, and until it leaves KINDER MORGAN's fixed dock flange or KINDER MORGAN's pipeline delivery flange, as the case may be. … KINDER MORGAN shall at all times use reasonable care and diligence, at the same level of care as used by terminal operators engaged in the storage and transfer of similar Commodities, to preserve and protect Customer's Commodities from damage or loss while in KINDER MORGAN'S custody.

Dkt. 32 at 25.  Viewing the facts in the most favorable light, Valero has alleged that KMLT breached an express warranty to use reasonable care and diligence in handling Valero's commodities.  Valero has stated a plausible claim that "the services received [from KMLT] failed to conform to the character or quality of the services as expressly promised." Dkt. 36 at 9 (citing *Brooks, Tarlton, Gilbert, Douglas & Kressler v. U.S. Fire Ins. Co.*, 832 F.2d 1358, 1375 (5th Cir. 1987), *decision clarified on reh'g*, 832 F.2d 1378 (5th Cir. 1987) (alteration added)).  In short, Valero has plead enough factual content to allow the court to draw the reasonable inference that

KMLT could be held liable for the conduct alleged. *Iqbal*, 556 U.S. at 678.  Therefore, the Court

recommends that KMLT's motion to dismiss Valero's breach of express warranty claim be denied.

### 4.  Valero's Claim for Contractual indemnity

The Terminal Services Agreement contains the following indemnity provision:

> Subject to the paragraph entitled "Limitation of Liability" hereof, KINDER
> MORGAN shall indemnify and hold Customer harmless from and against all
> claims, demands, losses, fines, penalties, expenses (including reasonable attorneys
> fees) costs, suits, and liabilities (collectively "Claims") to the extent caused by or
> resulting  from negligent or intentional wrongful acts or omissions on the part of
> KINDER  MORGAN, its employees, agents, or contractors in the performance of
> this Agreement or any Schedule or any breach of this Agreement or any Schedule
> by KINDER MORGAN. … KINDER  MORGAN shall not be liable for Claims
> arising from loss of or damage to any Commodity or property of Customer except
> when and to the extent caused by the negligent or intentional wrongful acts or
> omissions of KINDER MORGAN or its employees, agents, or contractors
> (collectively "KINDER MORGAN entities") and then only to the limits of liability
> stated herein for loss or damage to Commodities or property and only In proportion
> that the negligence or intentional wrongdoing of KINDER MORGAN entities is
> the cause of loss or damage as compared to any concurrent cause of the loss or
> damage.

Dkt. 32 at 28, ¶9(b)(1).  Based on this provision, Valero alleges it is "entitled to indemnity as

against Kinder Morgan for 'all claims, demands, losses, fines, penalties, expenses (including

reasonable attorney fees) costs, suits and liabilities (collectively "Claims") to the extent caused by

or resulting from negligent or intentional wrongful acts or omissions on the part of Kinder

Morgan.'"  Dkt. 32, ¶44.  Valero further alleges that it "has incurred and will incur such in

defending against the underlying action asserted against Valero by Gunvor."  *Id.*

KMLT moves for dismissal of the indemnity claim, contending Valero has not alleged facts

demonstrating any claims were caused by or result from "negligent or intentional wrongful acts or

omissions on the part of [KMLT.]"  Valero cites Gunvor's claim in the First Amended Complaint

that "cargo samples taken from the [KMLT Galena Park] terminal lines indicated a non-

conforming product.  Additionally and alternatively, the cargo samples taken after loading aboard the vessel did not meet specification."  Dkt. 32, ¶18.  Valero alleges that it "was without fault in causing and/or contributing to the damages asserted in Gunvor's First Amended Complaint[,]" and that the "contamination of the Naphtha was legally caused solely by [KMLT or the vessels.]" Dkt. 32 at ¶19.  Viewed in the light most favorable to Valero, these allegations collectively allege that the product was within specification when received at the KMLT flange, was within KMLT's care, custody and control while being loaded onto the vessels using KMLT's facilities, tested out of specification after leaving KMLT's terminal lines, and Gunvor has made a claim against Valero as a result of the non-conforming product.  The Court concludes that Valero's First Amended Third-Party Complaint states a plausible claim for indemnity under the Terminal Services Agreement, and therefore recommends that KMLT's motion to dismiss Valero's contractual indemnity claim be denied.

### 5.  Valero's Claim for Breach of Bailment

KMLT contends that Valero's breach of bailment claim must be dismissed because it is duplicative of its breach of contract claim. *See Crompton Greaves, Ltd. v. Shippers Stevedoring Co.*, 776 F. Supp. 2d 375, 391 (S.D. Tex. 2011) ("A bailment relationship does not create a specific cause of action but instead allows the bailor to choose the form of relief for breach, such as an action for breach of contract or an action for conversion.").  Valero's First Amended Third-Party Complaint alleges that KMLT breached its duties as bailee with respect to the Naphtha which Valero entrusted to KMLT's care, custody, and control, by failing to deliver the cargo to the vessel in good condition. Dkt. 32 at 16, ¶ 47.  Even if Valero's breach of bailment claim overlaps with its breach of contract claim, Valero is entitled to plead alternative forms of relief and should not be put to an election of remedies at this stage of the proceedings.  FED. R. CIV. PRO. 8(d).  Valero's

allegations in the First Amended Third Party Complaint state a plausible claim against KMLT for breach of bailment.[7]  Thus, the Court recommends that KMLT's Rule 12(b)(6) motion to dismiss Valero's breach of bailment claim be denied.

### B.   Gunvor's Claims against KMLT in the First Amended Complaint

#### 1.   Gunvor's Claims Against KMLT Resulting From Rule 14(c) Joinder

As discussed above, as a result of Valero's Rule 14(c) joinder, the case proceeds as if Gunvor had sued KMLT directly.  *Texaco Explor. & Prod. Co.*, 243 F.3d at 910.  KMLT therefore has moved to dismiss Gunvor's claims against it for breach of contract and bailment as well as negligence.  Gunvor has not responded to KMLT's Rule 12(b)(6) motion to dismiss the breach of contract and bailment claims (*see* Dkt. 26, 38) and asserts only a negligence claim against KMLT in the Amended Original Complaint.  *See* Dkt. 22.  To the extent Rule 14(c) requires the Court to construe Gunvor's Amended Original Complaint to assert breach of contract and bailment claims against KMLT, Gunvor has abandoned any such claims and they must be dismissed.[8]

#### 2.   Gunvor's Direct Negligence Claim Against KMLT

Gunvor's Amended Original Complaint alleges that "KMLT owed a legal duty to Plaintiffs to deliver the Naphtha cargo stored in the shore tanks 100-16 and 100-17 at KMLT Galena Park terminal as well as the Naphtha cargo delivered by the two sets of barges through the KMLT Galena Park terminal shore loop 8-D in the same good order and condition as when received," and

---

[7] The elements of a bailment are: "(1) the delivery of personal property by one person to another in trust for a specific purpose; (2) acceptance of such delivery; (3) an express or implied contract that the trust will be carried out; and (4) an understanding under the terms of the contract that the property will be returned to the transferor or dealt with as the transferor directs."  *General Elec. Co. v. M & M X-Press Service, Ltd.*, No. CIV.A. H-07-02175, 2008 WL 4747211, at *5 (S.D. Tex. Oct. 27, 2008).

[8] Even if not abandoned, claims other than negligence should be dismissed pursuant to Rule 12(b)(6).  It is axiomatic that Gunvor cannot state a claim for relief against KMLT for breach of contract because Gunvor does not allege that it has a contract with KMLT.  Moreover, as explained above in connection with Valero's bailment claim, an implied or express contract is also a prerequisite to a breach of bailment claim. *See Evans v. Vidalia Dock & Storage Co.*, 662 F. App'x 241, 243 (5th Cir. 2016) (affirming District Court's dismissal of claims pursuant to Rule 12(b)(6) after Rule 14(c) tender.

"KMLT had a duty to exercise ordinary care and act in a reasonably prudent manner in loading Plaintiff GUSA's cargo." Dkt. 22-1, at ¶¶46, 50.  Gunvor alleges KMLT breached the above duties in the following ways:

> On September 13-16, 2018, Defendant KMLT's careless, negligent and reckless conduct caused the contamination and the resulting off-specification of the Naphtha cargo purchased by Plaintiffs. Among other things, KMLT negligently failed to properly clean the shore tanks, shore lines, piping, manifolds, mixing tanks, shore loop etc. utilized to load the cargo aboard the vessel nominated by Plaintiffs to receive the cargo before loading operations commenced and/or negligently operated valves and/or manifolds in connection with cargo operations.

Dkt. 22-1, ¶ 48.  Gunvor seeks damages, including but not limited to, the costs of replacement cargo, increased ocean freight charges, costs of the mitigation of the damage cargo, increased demurrage, increased bunker consumption and increased inspection and analysis costs." *Id.* at ¶51.

As the parties' recognized at the hearing on May, 13, 2020, Gunvor's negligence claim against KMLT is a maritime tort.  "Under maritime law, a plaintiff is owed a duty of ordinary care under the circumstances." *Horizon Navigation Ltd. v. Progressive Barge Line, Inc.*, 365 F. Supp. 3d 715, 719 (E.D. La. 2019).

> The determination of the existence and scope of a duty 'involves a number of factors, including most notably the foreseeability of the harm suffered by the complaining party.' *Consol. Aluminum Corp. v. C.F. Bean Corp.*, 833 F.2d 65, 67 (5th Cir. 1987). A duty 'may be owed only with respect to the interest that is foreseeably jeopardized by the negligent conduct.' *Id.* 'To be foreseeable, the harm alleged must bear some proximate relationship with the negligent conduct such that it can reasonably be said to be within the 'scope of the risk' created by that conduct.' *In re Great Lakes Dredge & Dock Co*. LLC, 624 F.3d at 211 (quoting *Consol. Aluminum*, 833 F.2d at 67).

*Id.* at 719-20.  As a matter of pleading, Gunvor has alleged that KMLT owed Gunvor a duty to use reasonable care in the handling of the Naphtha and it was foreseeable that KMLT's failure to exercise reasonable care would damage the Naphtha.

Citing the economic loss rule, KMLT argues that Gunvor's "only possible avenue for recovery is through its contract with Valero." Dkt. 36 at 18. The Court disagrees. Gunvor's claim appears to fit squarely within the maritime economic loss rule as established in *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 309 (1927). The economic loss rule established by *Robins* and its progeny addresses the need to limit liability to foreseeable injury by requiring that a plaintiff suffer damage to property in which it held a proprietary interest. *Robins Dry Dock*, 275 U.S. at 307-09; *M/V Testbank*, 752 F.2d at 1023; *see also Catalyst Old River Hydroelectric Ltd. P'ship v. Ingram Barge Co.*, 639 F.3d 207, 210–11 (5th Cir. 2011) ("[W]hen the plaintiff does incur damage to his property, recovery for economic losses is allowed."). Gunvor has alleged a proprietary interest in the Naphtha. *See* Dkt. 22-1, ¶¶11-13 (regarding its contract for purchase of Naphtha). Although KMLT argued at the hearing that according to the TSA, title to the Naphtha remained with Valero until it left KMLT's flange, the Court agrees with Gunvor that for purposes of the motion to dismiss, it has alleged a proprietary interest in the Naphtha as demonstrated by the purchase contract between Gunvor and Valero. *See Mardi Gras World, LLC v. Marquette Transportation Co.*, 416 F. Supp. 3d 596, 602 (E.D. La. 2019) ("A plaintiff need not own property outright to have a 'proprietary interest' in it."). Therefore, the Court concludes that KMLT's motion to dismiss Gunvor's negligence claim should be denied at this stage of the proceedings.

## IV.    CONCLUSION

The Court **RECOMMENDS** that KMLT's Motion to Dismiss (Dkt. 36) be **GRANTED** as to Valero's claims for negligence and breach of implied warranties and as to Gunvor's claims tendered against it by Valero through Rule 14(c). The Court further **RECOMMENDS** that KMLT's Motion to Dismiss be **DENIED** as to Valero's claims against KMLT for breach of

contract, breach of express warranty, contractual indemnity, and breach of bailment, and **DENIED** as to Gunvor's direct claim against KMLT for negligence.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(c). Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), superseded by statute on other grounds.

Signed on May 18, 2020, at Houston, Texas.

Christina A. Bryan
United States Magistrate Judge